UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 02, 2024
LAURA A. AUSTIN, CLERK
BY  s/ S. MELVIN
    DEPUTY CLERK

**IAN LEWIS AUCKLAND,**

     **Plaintiff,**

v.                                                                                  Case No.   7:24-cv-00501

**GILEAD SCIENCES, INC.,**                                  JURY TRIAL DEMAND

Serve:

**CT Corporation System, R/A
4701 Cox Road, Suite 285
Glen Allen, Virginia 23060-6808**

and

**HILARY ZACHRY,** *in her individual capacity and professional capacity.*

     **Defendants.**

## COMPLAINT

COME NOW, Plaintiff Ian Lewis Auckland ("Mr. Auckland"), by counsel, and hereby provides this Complaint against Defendants, Gilead Sciences, Inc. ("GSI") and Hilary Zachry ("Ms. Zachry"), in her individual capacity and professional capacity. In support of this Complaint, Mr. Auckland provides the following:

### I. JURISDICTION AND VENUE

1.    Mr. Auckland is domiciled in the Commonwealth of Virginia. This matter arose out of employment relationships between the parties. GSI employed Mr. Auckland. Mr. Auckland worked from his home located in Franklin County, Virginia.

2.    Mr. Auckland, at all times relevant to this Complaint, was an "employee" of Defendant, as defined by Va. Code Ann. § 40.1-2. This matter arises out of violations of

state law.

3. Defendant GSI is a biopharmaceutical company incorporated in Delaware and headquartered in Foster City, California. GSI engages in commerce and sales throughout the United States including the Commonwealth of Virginia.

4. Defendant Hilary Zachry is an employee of GSI and is domiciled in the state of California.

5. This Court has diversity jurisdiction over all claims plead herein pursuant to 28 U.S.C. § 1332, as the parties have diversity of citizenship and the amount in controversy exceeds the statutory threshold.

6. Venue is permissive in this Court as the factual allegations that give rise to the causes of action, herein, were experienced by Plaintiff at his domicile/physical work location.

## II. FACTUAL ALLEGATIONS

7. Mr. Auckland was hired by GSI on or around October of 2014 until his termination from employment on or about December 1, 2023.

8. At the time of his cessation of employment with GSI, Mr. Auckland was an Executive Institutional Specialist. GSI paid Mr. Auckland salary, benefits, and bonuses in exchange for his employment.

9. During his tenure, Mr. Auckland performed his job duties with expertise and met legitimate workplace expectations.

10. GSI provided annual work performance reviews to Mr. Auckland. He consistently met and/or exceeded all expectations. GSI never issued Mr. Auckland a disciplinary action nor placed him upon a performance improvement plan.

11. In the summer of 2023, Mr. Auckland applied for a preceptorship opening

at GSI. Mr. Auckland had interest in the role for a variety of reasons including the role's potential as a "stepping stone" to roles higher in the chain of command at GSI. The preceptorship role included a higher visibility within GSI.

12. Mr. Auckland received the preceptorship position at GSI on or about October 12, 2023. GSI and Mr. Auckland considered this to be a promotion.

13. On or about November 21, 2023, Mr. Auckland received an invitation to an online video conference with GSI Human Resources. Mr. Auckland attended the conference.

14. Human Resources questioned Mr. Auckland repeatedly about his promotion. Mr. Auckland answered all questions truthfully and professionally. Examples of questions GSI representatives asked Mr. Auckland included asking for details about Mr. Auckland's knowledge of the promotion and his interest in the position.

15. After questioning Mr. Auckland regarding the promotion, the GSI representatives asked Mr. Auckland if he recalled speaking with GSI employee Hilary Zachry at a work conference in August of 2023.

16. Again, Mr. Auckland answered all questions truthfully and professionally. He had briefly encountered Ms. Zachry at the conference but had not engaged in significant conversation.

17. During the conference, Mr. Auckland spoke with Ms. Zachry for less than five minutes and was surrounded by GSI employees and third parties at all times during their brief encounter.

18. Human Resources informed Mr. Auckland that he was under investigation due to allegedly uttering unprofessional comments to Ms. Zachry at the conference.

19. Mr. Auckland was shocked and denied making any such comments to Ms.

Zachry or to anyone.

20. On or about December 1, 2023, GSI representatives from Human Resources contacted Mr. Auckland and terminated his employment.

21. After his termination, Mr. Auckland contacted multiple individuals he knew at GSI to inquire about what had occurred. Mr. Auckland had been shocked by his termination but was stunned further by the knowledge that Ms. Zachry and GSI had conspired to falsely harm him.

22. Mr. Auckland discussed the allegations leading to his termination with a team member of Ms. Zachry. Mr. Auckland learned that Ms. Zachry, a mentor in the preceptorship program, did not wish for Mr. Auckland to receive the preceptorship.

23. Ms. Zachry favored other parties for the position over Mr. Auckland. At all times, Ms. Zachry was motivated by this desire. In order to effectuate a result favorable to her, she intended to harm Mr. Auckland.

24. Upon information and belief, when Ms. Zachry learned that Mr. Auckland had applied for the preceptorship position, she devised a plan by which Mr. Auckland would not receive the position. Using a co-worker as part of the plan, Ms. Zachry informed the co-worker that Mr. Auckland had stated to her on or about August 9, 2023, "I want to rip your panties off." This statement was false. This statement was defamatory.

25. Ms. Zachry knew this statement was false and communicated to a third party in the interest of eliminating Mr. Auckland for consideration of the preceptorship position. Ms. Zachry at all times acted with malice against Mr. Auckland.

26. Ms. Zachry directed the GSI employee to report the false allegation to GSI management.

27. GSI management could not verify Ms. Zachry's account. GSI determined

that due to the false allegation, Mr. Auckland would neither be disciplined nor counseled for the incident.

28. However, instead of simply ending the matter, GSI sought to "buy" Ms. Zachry's silence. GSI informed Ms. Zachry that if Mr. Auckland received the preceptorship, he would not work the accounts preferred by Ms. Zachry.

29. GSI management offered this incentive to Ms. Zachry so that she would not raise her false allegation to Human Resources. Ms. Zachry agreed.

30. Time passed and Mr. Auckland received his promotion.

31. In a text a series of text messages shared with Mr. Auckland after his termination, Ms. Zachry exchanged messages with a co-worker about Mr. Auckland's promotion on or about October 17, 2023.

32. In her text message to her co-worker, Ms. Zachry wrote:

    a. "Did I hear correctly Ian was chosen for the preceptorship?" . . .

    b. "Yeah so I was told he would never be allowed in managed markets. That was what I was promised if I didn't go to HR.". . .

    c. "This was supposed to have been handled."

33. GSI had notice of the false allegation months prior to the meeting with Mr. Auckland on or about November 21, 2023. GSI misrepresented the timeline of events and the truth of its "investigation" when Human Resources personnel met with Mr. Auckland on that date.

34. GSI had no intention of investigating the matter in November of 2023 as the allegations had arisen and been rightfully discarded months earlier.

35. Despite this, in October of 2023, GSI, knowing the allegation had no merit, directed Human Resources to terminate Mr. Auckland from employment.

36. The false allegation communicated to GSI by Ms. Zachry, upon information and belief, had already been considered unsupported by GSI before October of 2023.

37. GSI had a duty to investigate the false information intentionally provided by Ms. Zachry. GSI engaged in no such investigation. When GSI confronted Mr. Auckland for the first time with notice of the allegation of November of 2023, due to an agreement with Ms. Zachry, GSI had already determined Mr. Auckland would be terminated regardless of the truth.

38. GSI terminated Mr. Auckland knowing that the allegations of inappropriate conduct on the part of Mr. Auckland was false.

39. GSI failed in its due diligence regarding verifying or certifying the information provided by Ms. Zachry. However, GSI did not merely fail in the duty to investigate the information provided by Ms. Zachry. GSI's actions and omissions extended beyond the duties of reasonableness and into acts of recklessness.

40. GSI held a high degree of awareness of probable falsity of the information provided by Ms. Zachry due to many factors rendering this information starkly uncharacteristic, atypical, and wholly unreliable. This extended well beyond any duty to investigate on behalf of GSI. No reasonable company would make the decisions made by GSI in this matter - - only a reckless company would.

41. GSI held a high degree of awareness of the probable falsity of Ms. Zachry's communications related to Mr. Auckland, rendering the decision to terminate Mr. Auckland a decision motivated by a reckless disregard for the truth.

42. At all times the Defendants operated with malice against Mr. Auckland.

43. Defendants' false assertions of fact have affected Mr. Auckland's prospects for future employment.

44. Due to the acts and/or omissions of Defendants, Mr. Auckland has, and will continue to suffer pecuniary losses, consequential damages, loss of professional reputation, enjoyment of life, mental anguish, and other compensatory damages.

## COUNT I: DEFAMATION

45. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

46. Ms. Zachry made false statements about Mr. Auckland to GSI.

47. The statement was objectively false. At all times, Ms. Zachry held a high degree of awareness that her statement was false.

48. Ms. Zachry and others acted within the scope of their employment, resulting in liability for GSI on the basis of *respondeat superior*.

49. As a result, Mr. Auckland's employment was terminated, resulting in pecuniary loss from same, loss of professional reputation, mental anguish, loss of enjoyment, sleeplessness, and other compensatory damages.

50. At all times Defendants operated with malice and bad faith. Defendants were motivated to harm Mr. Auckland and did so.

## COUNT II: DEFAMATION *PER SE*

51. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

52. Ms. Zachry made false statements about Mr. Auckland to GSI.

53. The statement was objectively false. At all times, Ms. Zachry held a high degree of awareness that her statement was false.

54. Ms. Zachry and others acted within the scope of their employment, resulting in liability for GSI on the basis of *respondeat superior*.

55. As a result, Mr. Auckland's employment was terminated, resulting in pecuniary loss from same, loss of professional reputation, mental anguish, loss of enjoyment, sleeplessness, and other compensatory damages.

56. At all times Defendants operated with malice and bad faith. Defendants were motivated to harm Mr. Auckland and did so.

57. The false statements, alleged to have been made to a co-worker at a work function, directly implicated Mr. Auckland's reputation within his field of employment.

## LEGAL ANALYSIS
### The Intracorporate Immunity Doctrine

Virginia does not strictly follow what is known as the "intracorporate immunity doctrine." In essence, that doctrine stands for the proposition that "statements published only to persons within a corporate entity having a duty and interest in the subject matter of the communication, have not been 'published' for defamation purposes." *Larimore v. Blaylock*, 259 Va. 568, 573 (2000). However, this doctrine was rejected twenty-three years ago by the Supreme Court of Virginia. *Id.*; *see, also Kuley v. Fayez*, Case No. CL-2014-1087 (Fairfax County Oct. 13, 2014) (Slip Op. at 5-6) (stating that *Larimore* rejected the intracorporate immunity doctrine "in no uncertain terms").

The Roanoke City Circuit Court followed this analysis in *Boyer v. Smith & Nephew, et al.*, CL 23-75, July 31, 2023. That opinion is appended to this matter and made a part hereof as **EXHIBIT A**. In *Boyer*, a terminated employee sued his employer and a co-worker for defamation. As alleged in the complaint, the co-worker was motivated by malice to remove the plaintiff from employment. The co-worker defamed plaintiff. The employer also possessed information in which it knew, or should have known, that the statement made about the plaintiff was false. The circuit court overruled demurrers and

allowed claims of defamation against all defendants, the co-worker, and employer to advance. As opined by the circuit court, "the intracorporate immunity doctrine does provide a qualified privilege, but such privilege is lost when the communication is made with malice." The circuit court cited *Cashion v. Smith*, 286 Va. 327 (2013) as an example in which Virginia's highest court considered that malice defeated the intracorporate immunity doctrine.

WHEREFORE, Plaintiff Ian Lewis Auckland prays for judgment against Defendants, Gilead Sciences, Inc. and Hilary Zachry, jointly and severally, for lost wages and benefits, equitable relief, economic damages reasonably foreseeable, compensatory, punitive damages, actual damages, together with prejudgment interest from the date of publication of the false statements in the sum of Ten Million Dollars ($10,000,000.00), and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

***Trial by jury is demanded on all issues on which Plaintiff is entitled to a trial by jury.***

Respectfully Submitted,

**IAN LEWIS AUCKLAND**

_____
Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Ave. SW
Roanoke, VA 24018
Tel: 540-283-0802
thomas@vaemployment.law
leigh@vaemployment.law

*Counsel for Plaintiff*