CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
7/14/2025
LAURA A. AUSTIN, CLERK
BY: s/c Kymp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IAN LEWIS AUCKLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00501 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GILEAD SCIENCES, INC., and | ) | By:   Hon. Thomas T. Cullen |
| HILARY ZACHRY | ) |        United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Ian Lewis Auckland ("Auckland") brought this action against Defendants Gilead Sciences, Inc. ("GSI") and Hilary Zachry ("Zachry") (collectively, "Defendants"), alleging defamation and defamation *per se.* (Am. Compl. ¶¶ 47–59 [ECF No. 19].) This case is before the court on Defendants' motion to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Renewed Mot. Dismiss [ECF No. 22].) For the reasons below, the court will grant Defendants' motion and dismiss the amended complaint.

## I.    STATEMENT OF FACTS

### A.  Substantive Allegations

The facts are taken from Auckland's amended complaint and, for purposes of this motion, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences are drawn in favor of the plaintiff. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

Auckland began working for GSI on or around October 2014. (Am. Compl. ¶ 7.) He lives in Virginia and worked for GSI from his home in Franklin County. (*Id.* ¶ 1.) GSI is a biopharmaceutical company that operates throughout the United States, including in Virginia. (*Id.* ¶ 3.) The company is incorporated in Delaware and headquartered in California. (*Id.*) Zachry is also an employee of GSI and is domiciled in California. (*Id.* ¶ 4.)

In the summer of 2023, after over seven years of employment at GSI, Auckland applied for a preceptorship role. (*Id.* ¶ 11.) That role was associated with greater visibility and was often leveraged for career advancement within GSI. (*Id.*) Auckland considered the preceptorship role to be a promotion compared to his role at the time as an executive institutional specialist. (*Id.* ¶ 8, 12.) At the time he applied, Auckland contends he was an exemplary employee; on GSI's annual performance reviews during his employment, Auckland consistently met or exceeded all managerial expectations. (*Id.* ¶ 10.) Zachry was a mentor for the GSI preceptorship program when Auckland applied for the position. (*Id.* ¶ 22.)

In August of 2023, both Auckland and Zachry attended a work conference in Nashville, Tennessee. (*Id.* ¶ 15.) At the conference, Auckland and Zachry spoke to each other for approximately 5 minutes. (*Id.* ¶ 17.) Auckland and Zachry were surrounded by GSI employees and others during their conversation. (*Id.*) The conference concluded and both parties returned home.

On October 12, 2023, about two months after the conference, Auckland received the preceptorship position for which he had applied. (*Id.* ¶ 12.) On November 21, 2023, Auckland received an invitation to an online video conference with GSI Human Resources ("HR"), which he attended. (*Id.* ¶ 13.) During the video conference, HR questioned him about the

preceptorship role and his interest in applying for it. (*Id.* ¶ 14.) HR also asked him if he recalled speaking to Zachry at the August conference. (*Id.* ¶ 15.) Auckland said that he remembered speaking with Zachry, and he described their conversation as brief and insignificant. (*Id.* ¶ 16.) According to Auckland, he answered these questions truthfully and professionally. (*Id.* ¶ 14.)

HR informed Auckland that he was under investigation for allegedly stating to Zachry at the conference that he "want[ed] to rip [her] panties off." (*Id.* ¶¶ 18, 24.) The allegation shocked Auckland, and he denied making the statement. (*Id.* ¶ 19.) Auckland alleges that GSI did not investigate Zachry's report to HR, nor did it have any intention of doing so. (*Id.* ¶ 36.) He further alleges that GSI's management directed HR to terminate Auckland's employment, despite knowing that Zachry's accusations of harassment against Auckland were false. (*Id.* ¶ 37.) On December 1, ten days after the video conference, HR notified Auckland that his employment at GSI had been terminated. (*Id.* ¶ 20.)

After his termination, Auckland discussed the allegation underlying Zachry's HR report with multiple former colleagues, including one of Zachry's team members. (*Id.* ¶ 22.) From that conversation, Auckland learned that Zachry favored other people for the preceptorship position. (*Id.* ¶ 23.) He also learned that Zachry had told a co-worker that Auckland had said he "want[ed] to rip [her] panties off" and directed that co-worker to report it to GSI's management. (*Id.* ¶¶ 24–28.) Auckland alleges that Zachry spread this harassment allegation, which she knew to be false, to prevent him from receiving the preceptorship position. (*Id.*)

Further, Auckland alleges that, after it could not verify Zachry's report to HR, GSI tried to cover up Zachry's harassment allegation. (*Id.* ¶¶ 29–30.) Auckland claims that, in exchange for her silence concerning Auckland's alleged sexually charged statement at the

conference, GSI promised Zachry that Auckland would not work on accounts that Zachry preferred. (*Id.* ¶¶ 30–31.) But despite Zachry's machinations against him, Auckland received the preceptorship. (*Id.* ¶ 32.)

## B. Jurisdictional Evidence

After Defendants filed the instant motion to dismiss, the court ordered limited jurisdictional discovery so that the parties could fully resolve whether there is a basis for the court's exercise of personal jurisdiction over Zachry. In his deposition, taken during jurisdictional discovery, Auckland testified that, after his termination, he spoke on the phone to Buffy Moran, Key Account Director for Oncology at GSI. (Dep. of Ian Auckland 17:12–18:3 [ECF No. 30-1]; Dep. of Hilary Zachry 10:22–23, 15:9–10 [ECF No. 30-3].) Ms. Moran is based in Virginia and works on the same team as Zachry. (Auckland Dep. 21:9–11; Zachry Dep. 16:11–13.) During that phone call, Auckland learned from Ms. Moran that Zachry had told the medical science liaison with whom she worked that Auckland had made sexually charged comments to her at the conference. (Auckland Dep. 15:15–21.) Auckland testified that he did not know where either Zachry or the medical science liaison were located when this conversation took place. (*Id.* at 22:12–23:17.) Further, he did not know where the medical science liaison resided or what office he was assigned to, and he had no information that the medical science liaison was in Virginia at any relevant time. (*Id.* at 38:10–20.) He further testified that he assumed either Zachry or the medical science liaison (at Zachry's direction) were the source of the harassment report to HR. (*Id.* at 27:10–13, 38:2–9.)

During their phone call, Ms. Moran also informed Auckland about a series of text messages she had exchanged with Zachry in October 2023. (Auckland Dep. 24:9–14.) In those

messages, Zachry and Ms. Moran discussed Auckland's promotion, and Zachry said that she "was told he would never be allowed in managed markets. That was what [she] was promised if [she] didn't go to Hr [*sic*]. . . . This was supposed to have been handled." (Supp. Resp., Ex. B [ECF No. 30-2].) Auckland did not know where either Zachry or Ms. Moran were physically located when they exchanged these messages. (Auckland Dep. 39:5–9.)

Auckland also testified that Ms. Moran never told him expressly that Zachry had communicated to her that Auckland made sexually charged comments at the conference. (Auckland Dep. 31:16–20.) He clarified that Ms. Moran was aware of Zachry's harassment allegations against him, but he did not know whether those allegations were "communicated to her" by "Ms. Zachry or through colleagues." (*Id.* at 33:1–3.)

In her deposition, Zachry testified that she had conversations with numerous people "inside Gilead" about Auckland's sexually charged comments, but Ms. Moran was the only one of those people associated with Virginia. (Zachry Dep. 25:19–27:14.) Zachry testified that she told Ms. Moran about Auckland's alleged comments in Nashville at the conference the day after her interaction with Auckland. (*Id.* at 27:18–22.) She also stated that her text-message exchange with Ms. Moran in October occurred during "conference season in the fall, so it's high likelihood [*sic*] there was a good amount of travel" at that time. (*Id.* at 30:9–31:1.) But she did not know where Ms. Moran was at the time of the exchange. (*Id.* at 31:23–32:1.)

Finally, Zachry testified that, during her employment at GSI, she never had contact with any GSI customers in Virginia. (Zachry Dep. 13:2–6.) The only GSI employee associated with Virginia with whom Zachry ever had contact was Ms. Moran. (*Id.* at 15:1–5.)

### C. Procedural History

On August 2, 2024, Auckland brought suit in this court against GSI and Zachry, alleging claims of defamation and defamation *per se*. After the court granted Defendants' first motion to dismiss in part, Auckland filed an amended complaint, and Defendants moved to dismiss the amended complaint. The court then ordered limited jurisdictional discovery and ordered the parties to file supplemental briefs after they completed that discovery. Those briefs have been filed, and the matter is ripe now for disposition.[1]

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(2) challenge a court's personal jurisdiction over a defendant. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because the parties have now conducted jurisdictional discovery, the court is no longer required to "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Rather, when the court addresses the personal jurisdiction question after the parties had "a fair opportunity to present to the court the relevant facts and their legal arguments" the plaintiff "must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Grayson v. Anderson*, 816 F.3d 262, 268–69 (4th Cir. 2016). Though application of this standard requires the court to conduct an "evidentiary hearing," such hearing need not include live testimony so long as the parties had the opportunity to present their arguments and evidence to the court. *Id.* at 269. Presentation of such evidence may be completed by the court's review of

---

[1] The court dispenses with oral argument because it would not aid the decisional process.

"depositions, interrogatory answers, admissions, or other appropriate forms," and the court is not "automatically" required to "assemble attorneys and witnesses when doing so would ultimately serve no meaningful purpose."[2] *Id.*

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.    ANALYSIS

### A. The court lacks personal jurisdiction over Zachry

A court may "assert personal jurisdiction over a nonresident defendant" if two conditions are met: "(1) the exercise of jurisdiction must be authorized under the" forum state's—here, Virginia's—long-arm statute; and "(2) the exercise of jurisdiction must comport

---

[2] The court has reviewed the deposition transcripts the parties appended to their briefs. It appears to the court, based on the briefing, that these depositions substantially encompass the universe of jurisdictional discovery in which the parties engaged during the time allotted by the court. Consequently, the court does not find that an evidentiary hearing would add anything of value to the parties' presentation of their arguments and evidence. Rather, holding a hearing to take live testimony and oral argument would "serve no meaningful purpose" in this case. *See Grayson*, 816 F.3d at 269.

with the due process requirements of the Fourteenth Amendment." *Carefirst of Md.*, 334 F.3d at 396. Virginia's long-arm statute permits courts to exercise personal jurisdiction over "a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth."[3] Va. Code Ann. § 8.01-328.1(A)(1). And the Supreme Court of Virginia has interpreted the Virginia long-arm statute to be co-extensive with "the outer bounds of due process," so this two-step inquiry collapses into a single question. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012); *see AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 688 (E.D. Va. 2014). Accordingly, the proper inquiry is only whether the defendant has "sufficient minimum contacts with the forum state" to permit the court's exercise of jurisdiction. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009).

Before engaging in jurisdictional discovery, Auckland relied on four paragraphs of his amended complaint in arguing that the court could permissibly exercise personal jurisdiction over Zachry: (1) Paragraph 26, which alleges that "Ms. Zachry communicated her defamatory allegations to 3rd parties in the Commonwealth of Virginia"; (2) Paragraph 27, which alleges that "Ms. Zachry communicated her defamatory allegations to at least one employee of GSI in the Commonwealth of Virginia"; (3) Paragraph 33, which alleges that "[i]n a series of text messages, shared with Mr. Auckland after his termination, Ms. Zachry exchanged messages

---

[3] The long-arm statue also permits the exercise of jurisdiction on a number of additional bases not relevant here. *See* Va. Code Ann. § 8.01-328.1(A)(2)–(10). Further, there is no contention that Zachry's contacts with Virginia are sufficiently "continuous and systematic" to give the court general personal jurisdiction over her, so the court's exercise of personal jurisdiction, if permissible, must be based on the conduct giving rise to this litigation. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.5 (4th Cir. 2009).

with a Virginia-based co-worker about Mr. Auckland's promotion on or about October 17, 2023"; and (4) Paragraph 34, which quotes several of the messages Zachry sent on that date. (Am. Compl. ¶¶ 26–27, 33–34; *see* Resp. Opp. Renewed Mot. Dismiss at 4–5 [ECF No. 24].)

Following jurisdictional discovery, Auckland has abandoned Paragraphs 26 and 27 as bases for the court's exercise of jurisdiction. And rightfully so, as Auckland's own deposition during jurisdictional discovery revealed that Paragraphs 26 and 27 are without basis in fact. During his deposition, Auckland testified that Paragraph 26's mention of "3rd parties" refers only to Ms. Moran. (Auckland Dep. 31:6–14.) Auckland also testified that the "employee of GSI in the Commonwealth of Virginia" mentioned in Paragraph 27 was Ms. Moran. (*Id.* at 34:10–18.) But by his own admission, Auckland had no idea whether Zachry had "communicated" her allegations of harassment to Ms. Moran, let alone whether Ms. Moran was in Virginia at any relevant time. (*Id.* at 33:1–3.) To the contrary, Zachry's deposition revealed that, though Zachry had personally conveyed the allegation of harassment to Ms. Moran, both Zachry and Ms. Moran were in Nashville when that conversation took place. (Zachry Dep. 27:18–22.) Consequently, Zachry's communications with Ms. Moran, as alleged in Paragraphs 26 and 27 of the amended complaint, do not establish the requisite minimum contacts with Virginia that would allow the court to exercise personal jurisdiction over Zachry.

Relatedly, Paragraph 28 alleges that "Ms. Zachry directed the GSI employee to report the false allegation to GSI management." (Am. Comp. ¶ 28.) It would seem that "the GSI employee" in Paragraph 28 refers to the same employee mentioned in the prior paragraph. (*See id.* ¶¶ 27–28.) But Auckland testified during his deposition that Paragraph 28 refers to the medical science liaison with whom Zachry worked. (Auckland Dep. 38:2–9.) That too does

not establish any contacts with Virginia because Auckland testified that he did not know where the medical science liaison lived or what office he was assigned to, and he had no information that the medical science liaison was in Virginia at any relevant time.[4] (*Id.* at 38:10–20.)

That leaves only Zachry's text-message exchange with Ms. Moran, as alleged in Paragraphs 33 and 34 of the amended complaint. (Supp. Br. Opp. Renewed Mot. Dismiss at 3–4 [ECF No. 29].). The court addressed this exchange in its Memorandum Opinion on Defendants' first motion to dismiss:

> While a "single act of doing business by a person in the Commonwealth" suffices to confer personal jurisdiction, *Darden v. Heck's, Inc.*, 459 F. Supp. 727, 731 (W.D. Va. 1978), "the law is well settled that mere emails and telephone calls directed at Virginia do not amount to transacting business in Virginia," *Nathan v. Takeda Pharms. Am. Inc.*, CL-2010-2064, 2011 WL 8947650, at *8 (Va. Cir. Ct. Aug. 2, 2011). It follows that Zachry's "single act" of exchanging a series of text messages does not confer jurisdiction of this court over her personally because the text message exchange is not a business transaction within the meaning of the long-arm statute. *See id.*

(Mem. Op. at 6 [ECF No. 16].) The court is not inclined to reconsider or overturn its own prior ruling, particularly since Auckland made no new arguments with regard to this text-message exchange.

But even if a brief text-message exchange *could* suffice as a basis for personal jurisdiction, *this* text-message exchange cannot. Auckland testified that he did not know where either Zachry or Ms. Moran were physically located when they exchanged these messages. (Auckland Dep. 39:5–9.) Zachry testified that she did not know where Ms. Moran was at the

---

[4] Despite having ample opportunity to do so, Auckland failed to present any other jurisdictional evidence suggesting, let alone establishing, that the medical science liaison resided or worked in Virginia.

time, but that October is "conference season," so both she and Ms. Moran were travelling a lot that month. (Zachry Dep. 30:9–32:1.) Based on the deposition testimony, there is nothing to suggest that Ms. Moran was in Virginia at the relevant time, but there is evidence that suggests that she was elsewhere. (*Id.*) Consequently, even if this text-message exchange were a business transaction within the meaning of Virginia's long-arm statute such that it could confer personal jurisdiction over Zachry, Auckland has not met his burden of proving by a preponderance of the evidence that the text-message exchange actually occurred "in this Commonwealth." *See* Va. Code Ann. § 8.01-328.1(A)(1); *Grayson*, 816 F.3d at 268–69. The court will therefore grant Defendants' motion to dismiss the claims against Zachry for lack of personal jurisdiction.

## B.  Zachry was not acting within the scope of her employment

With respect to Auckland's claims against GSI, the sole question before the court is whether Zachry was acting within the scope of her employment such that GSI can be held vicariously liable for her conduct. The court concludes that, on the basis of the allegations in Auckland's amended complaint, she was not.

As the court explained in its prior opinion, Auckland seeks to hold GSI liable only based on respondeat superior. (Mem. Op. at 9.) Neither the original complaint nor Auckland's amended complaint contain any allegation of direct liability on the part of GSI. (*Id.*; *see generally* Am. Compl.) Under Virginia law, respondeat superior liability applies only if "the employee was performing [her] employer's business and acting within the scope of [her] employment when the tortious acts were committed." *Garnett v. Remedi SeniorCare of Va., LLC*, 892 F.3d 140, 145 (4th Cir. 2018) (internal quotation omitted). The existence of an employment

- 11 -

relationship gives rise to a rebuttable presumption that the employee was acting within her scope of employment, but "[a] plaintiff can plead herself out of court by affirmatively alleging facts that rebut the presumption implied in law . . . . At the demurrer stage of a case, however, the self-refutation must be clear, not conjectural, and irrefutable rather than debatable." *Parker v. Carilion Clinic*, 819 S.E.2d 809, 822 (Va. 2018). Further, "Virginia courts generally take a broad view of the employment relationship, and have held that even intentional torts may be within the scope of employment." *Emami v. Bolden*, 175 F. Supp. 3d 616, 621 (E.D. Va. 2016).

Nonetheless, liability cannot extend to an employer for an unauthorized tortious act by an employee arising "wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account." *Smith v. Landmark Commc'ns, Inc.*, 431 S.E.2d 306, 30708 (Va. 1993). "A servant's tortious act is within the scope of employment if, but only if, it is actuated *at least in part*, by a purpose to serve the master." *Parker*, 819 S.E.2d at 821.

In *Brown v. United States*, a court in the Eastern District of Virginia concluded that reporting sexual harassment was within the scope of an FBI Special Agent's employment because maintaining a harassment-free workplace is in the employer's interest, and the report of harassment therefore served the employer's purpose. 933 F. Supp. 2d 780, 785 (E.D. Va. 2013). But *Brown* does not control in this case for two reasons. First, the court in *Brown* grounded its reasoning on the existence of the FBI's "Policy on Harassment," which "'strongly encourage[d]' employees to report sexual harassment." *Id.* at 784. Based on that policy, the court concluded that "preventing and correcting workplace sexual harassment is very much within the 'ordinary course of [the FBI's] business.'" *Id.* at 785 (quoting *Gina Chin & Assoc.*,

- 12 -

*Inc. v. First Union Bank*, 543 S.E.2d 573, 578 (Va. 2000)) (alteration in original). By contrast, Auckland has not alleged that any such policy existed at GSI or that GSI had otherwise provided any guidance on when or how to report sexual harassment.

Second, and more importantly, in *Parker v. Carilion Clinic*, decided five years after *Brown*, the Supreme Court of Virginia "sought to recapture the 'first principles' of respondeat superior and to eliminate some of the 'doctrinal vagaries' that had crept into [its] jurisprudence on this issue." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 22–23 (Va. 2019) (quoting *Parker*, 819 S.E.2d at 819). In returning to those "first principles," the Supreme Court of Virginia emphasized the "job-related-service principle," which holds that, "while it is true that vicarious liability is not limited to those acts of the servant which promote the object of the employment, it is equally true that no such liability can be imposed if the tortious act did not arise out of *the very transaction, or service or task*, that the employee was being paid to perform." *Parker*, 819 S.E.2d at 819 (internal quotations omitted) (emphasis added). Reporting sexual harassment—whether falsely or accurately—is not the "very transaction, or service or task" that Zachry was hired to perform.[5] *Parker* makes clear that employers can only be held liable for the torts of their employees if the employees were acting in furtherance of *the* purpose for which the employee was hired. *See id.* ("In Virginia, the first principle of respondeat superior is that vicarious

---

[5] In his deposition, Auckland testified that he did not know whether it was Zachry or the medical science liaison who reported the alleged harassment to HR. (Auckland Dep. at 27:10–13.) For the purposes of GSI's Rule 12(b)(6) motion, the court cannot take this testimony into account because the court must accept the amended complaint's allegations as true and cannot look beyond "the four corners of the complaint." *Guerrero v. Ollie's Bargain Outlet, Inc.*, 115 F.4th 349, 356 (4th Cir. 2024). Even if the court were to consider this testimony, it would not change the outcome. Whether Zachry herself made the report or directed a co-worker to do so, her conduct is not the "very transaction, or service or task" that she was employed to perform. Nor can her conduct be fairly said to fall within the scope of her employment if she was merely conveying that information to a co-worker. *See Garnett*, 892 F.3d at 146 (holding that an employee's "responsibilities did not involve gossiping to his co-workers").

liability may be imposed on an employer when the *service itself*, in which the tortious act was done, was within the ordinary course of the employer's business." (cleaned up)). Even if the tortfeasor's conduct served a purpose in the employer's interest, a tangential benefit unrelated to the job the employee was hired to perform will not do. *Id.* After *Parker*, Zachry's report of harassment was not within the scope of her employment under Virginia law.

What's more, the principles underlying respondeat superior do not logically apply under the circumstances presented in this case. Respondeat superior is predicated on the idea that the employee is acting as an agent of their employer *vis-à-vis* the tort victim. *See Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 265 (Va. 1995) (stating that respondeat superior "impute[s]" an "agent's tortious act . . . to the principal"). In effect, the tort victim understood the agent to represent the employer in their actions. But an employee is not acting with their employer's authority when they report harassment *to their employer*. GSI is not acting through Zachry when Zachry makes a report to GSI. The principles underlying respondeat superior simply do not map on to a conclusion that Zachry was acting within the scope of her employment. And this incoherence further supports the court's conclusion that she was not.

Because Zachry was not acting within the scope of her employment when she engaged in the alleged tortious activity, GSI cannot be held vicariously liable for her conduct. Accordingly, Auckland's claims against GSI will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted, and the amended complaint will be dismissed in its entirety.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 14th day of July, 2025.

_/s/ Thomas T. Cullen_
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE